Rosie Jablonski, Plaintiff-Appellee, v. Washington County Mutual Fire Insurance Company, Defendant-Appellant.

### Term No. 57–F–12.

Fourth District.
May 15, 1957.
Released for publication June 4, 1957.

House & House, of Nashville, for defendant-appellant.

Meryl T. Schroeder, of Mascoutah, and Walther, Barnard and Walther, of St. Louis, Missouri, for plaintiff-appellee.

JUDGE BARDENS delivered the opinion of the court.

Defendant, a county mutual fire insurance company, appeals from a judgment of the Circuit Court of Washington county finding it liable on a policy of fire insurance for destruction of plaintiff's residence. Defendant contends on appeal, as it did below, (1) that the policy in question was suspended because of plaintiff's failure to pay a prior assessment, and (2) that the policy had been cancelled more than a year prior to the fire loss.

Defendant company was organized and has operated under "An Act relating to local mutual, district, county and township insurance companies," Ill. Rev. Stat. 1955, Ch. 73, Secs. 204.1–204.24. This Act, a part of our law since 1877, has provided the statutory authority for rural property owners joining together in a non-profit corporation to share fire losses. From time to time, under the current statute, assessments are

made by the directors of such companies to pay losses and costs of operation.

On June 12, 1951, defendant executed and delivered to plaintiff a policy of insurance having a five-year term, which included coverage of residence property. On August 3, 1953, an assessment was made on all policy holders which plaintiff failed to pay. A further notice sent on October 15, 1953, reminding plaintiff of her failure to remit brought no response. Thereupon, on December 8, 1953, the following notice was sent to plaintiff:

"The Board of Directors of the Washington County Mutual Fire Insurance Company, of Washington County, Ill., at a special meeting Aug. 14, 1953, ordered to levy an assessment of twenty (20) cents on each $100.00 insurance in force. Notices were mailed on Sept. 1, 1953, and on Oct. 15, 1953.

You have failed to pay your assessment, and are hereby notified that your policy No. 400 has been cancelled and is null and void.

The above policy may be reinstated (in case of no loss) by paying the above assessment.

If you have paid one of our Directors, or any Bank, please advise me, and our records will be changed accordingly."

On December 21, 1954, a year after the cancellation notice was sent, the fire loss occurred and the company promptly denied liability.

The trial court's finding for plaintiff was based on the ground that the assessment and notice were illegal because not in accordance with statutory requirements, and that therefore the cancellation of the policy relying on plaintiff's failure to respond to such illegal assessment was likewise void.

501

■ ■ The statutory provision regarding cancellation of policies of companies regulated thereunder is found in Sec. 204.20 and is as follows:

". . . the company shall have the power to cancel or terminate any policy by giving the insured notice to that effect, as provided for in the policy."

The policy contained the following standard fire policy provision covering cancellation:

"This policy shall be cancelled in whole or in part at any time at the request of the insured upon the return of this policy to the Home Office of this Company, . . . or may be cancelled by this Company by giving five days' notice of such cancellation."

From these provisions it is clear that a mutual right of cancellation exists, the effective date of which, in the case of cancellation by the company, is five days after notice. Nowhere in the statute or policy is there found any provision that cancellation by the company is conditioned upon the existence or recital of a reason, valid or otherwise, for such action. Nor can we read any such restriction into the statute or policy. The validity of the assessment and notice is, therefore, wholly irrelevant to this proceeding and need not be considered. Had the company not cancelled the policy and instead relied upon the by-laws suspending coverage for failure to pay an assessment, or if it were attempting to collect the assessment by legal action, then the validity of the assessment and notice would be a proper issue.

The case of Maples v. Newton Mutual County Fire Ins. Co., 260 Ill. App. 278, is strongly relied on by plaintiff. The facts are substantially similar to those in the instant case except with regard to cancellation. After hearing the evidence for both sides the trial court directed a verdict for the plaintiff policy holder, which

action was affirmed on review. In that case the attempted cancellation was based upon a provision voiding the policy for non-payment of premium within the prescribed period after notice. The purported termination was headed "Delinquent Notice" and did not use the word "cancelled" but stated only that the policy was null and void because of an unpaid assessment. In the case at bar the notice was headed "Cancellation Notice" and plainly states that the policy "has been cancelled." It clearly falls within the "Cancellation" clause rather than the "Neglect or Failure to Pay" clause. The Maples case is distinguishable on this basis.

■ Plaintiff contends further, however, that the cancellation notice itself was defective because it did not give her five days notice of such action; that it purported to be a present cancellation or recitation of a prior cancellation; and that there can be no implication read into the notice that it was to be effective five days hence. We find no merit in this argument. The only case we have found in this jurisdiction touching on the point, Colonial Assur. Co. v. Nat. Fire Ins. Co., 110 Ill. App. 471, holds that a cancellation notice of a less formal nature than that used in the instant case was sufficient to terminate insurance coverage five days thereafter. In Gendron v. Calvert Fire Ins. Co., 47 N. M. 348, 143 P.2d 462, where the policy cancellation provision was identical to that in the instant case, the court said:

"There is no merit to the contention that the notice given should have fixed any time or date when the cancellation became effective, absent a requirement of the policy to that effect. Cancellation becomes effective under the terms of the policy at the end of five days after written notice is given by the company."

The following comment by the annotator in 35 A. L. R. 899 fairly sums up the prevailing view on this matter:

503

"While there are cases actually or apparently opposed, the better view is that any notice otherwise sufficient in form—i. e., as to writing, etc.—which clearly conveys to the assured notice of cancellation, is effective after lapse of the full time stipulated in the policy, whether it be a notice of immediate cancelation of a policy contemplating cancelation only after notice, or whether the notice given, while not a notice of immediate cancelation is shorter than that stipulated in the policy. The view is reasonable, for the only purpose of the notice to be given by the company upon cancelation is to enable the assured to obtain protection elsewhere before he is subjected to the risk without protection and it finds the support of both the majority and better considered of the cases."

We agree with the preceding comment and cases and hold that the notice of cancellation was not insufficient because the effective date of such cancellation was not fixed. It was an unconditional cancellation which by the terms of the policy became effective five days thereafter.

For the reasons stated the judgment appealed from is reversed.

Judgment reversed.

SCHEINEMAN, P. J. and CULBERTSON, J., concur.